IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| BRADLEY MANDELA HOUSTON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 5:24-cv-154-TES-CHW |
| | : | |
| OFFICER MITCHELL, *et al.*, | : | Proceedings Under 42 U.S.C. § 1983 |
| | : | Before the U.S. Magistrate Judge |
| | : | |
| Defendant. | : | |
| | : | |

## REPORT AND RECOMMENDATION

Plaintiff Bradley Mandela Houston, a state inmate, filed a *pro se* civil rights complaint seeking relief under 42 U.S.C. § 1983 regarding his confinement at Wilcox State Prison. (Doc. 1). Defendants Officer Mitchell and Deputy Warden Latorsha Jones have filed a motion for judgment on the pleadings citing Plaintiff's failure to exhaust. (Doc. 26). Plaintiff has responded and opposes the motion. (Doc. 28). Because Defendants have shown that Plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit, it is **RECOMMENDED** that Defendants' motion for judgment on the pleadings (Doc. 26) be **GRANTED**.

### I.   Background

Plaintiff brought this action on May 9, 2024, alleging constitutional violations against multiple defendants regarding his incarceration at Wilcox State Prison (WSP). (Doc. 1). Following screening of Plaintiff's complaint under 28 U.S.C. § 1915A, the Court allowed Plaintiff to proceed on a deliberate indifference to safety claim against Defendants. (Doc. 5). The claim stems from multiple alleged inmate assaults in September 2023. (Doc. 1, p. 5).

Defendants filed a motion for judgment on the pleadings, which contends that Plaintiff did not properly exhaust his administrative remedies before bringing suit. (Doc. 26). In his complaint, Plaintiff states that he submitted a grievance but "nothing happen[ed]." (Doc. 1, p. 3).

II.     **Failure to Exhaust**

The Prison Litigation Reform Act (PLRA) requires prisoners to exhaust available administrative remedies before bringing an action with respect to prison conditions under 42 U.S.C. § 1983, of any other federal law. 42 U.S.C. § 1997(e)(a). Exhaustion in this context means proper exhaustion: prisoners must "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in a federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). The exhaustion requirement is "designed 'to eliminate unwarranted federal-court interference with the administration of prisons'" by "'seek[ing] to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008) (quoting *Woodford*, 548 U.S. at 93).

The Eleventh Circuit's *Turner* opinion establishes a two-step process for reviewing motions to dismiss based on a prisoner's failure to exhaust. A reviewing court first "looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Turner*, 541 F.3d at 1082. Second, if the complaint is not dismissed under step one, "the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion. . . . Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative

remedies." *Id.* at 1082–83 (internal citations omitted). As failure to exhaust is an affirmative defense under the PLRA, "defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id.*

The grievance procedure applicable in this case is set by the Georgia Department of Corrections Standard Operating Procedure No. 227.02 (Doc. 26-3). Under that procedure, prisoners must follow a two-step process by first filing an "original grievance" within ten days of the grievable issue. (*Id.* at 8).[1] Prisoners may file outside of the 10-day window if they show good cause. (*Id.*). The original grievance is then screened by prison staff, and typically either rejected or accepted for processing. (*Id.* at 9). The grievance procedure further provides that a response of some kind is due within 40 days of the date of a grievance's submission, with the possibility of a 10-day extension on written notice. (*Id.* at 11). Once the prisoner receives the warden's response, or when the time allowed for the warden to respond expires without a response, the prisoner must proceed to step two by filing a "Central Office Appeal" within seven days. (*Id.* at 14). The grievance procedure then contemplates a 120-day period in which the Commissioner may give a response. (*Id.* at 15).

A. Turner *Step One*

In considering whether dismissal for failure to exhaust is appropriate, under *Turner*'s step one the Court must consider first all the alleged facts, construed in favor of Plaintiff when the facts conflict. In his complaint, Plaintiff acknowledges that WSP has a grievance procedure and claims that he submitted a grievance. (Doc. 1, p. 3). In his response to Defendants' motion, Plaintiff states that he filed a grievance outside the 10-day window but showed good cause for the failure. (Doc.

---

[1] The referenced page numbers cite to the policy itself and not the document to which the policy was attached.

28, p. 1). While the exhaustion analysis could arguably end at step one due to Plaintiff's admission that he filed outside of the 10-day window, the complaint would still be dismissed under *Turner*'s second step, where any disputed facts must be examined to determine if the administrative remedies were available and, if they were, whether Plaintiff exhausted those available administrative remedies prior to filing suit.

B.  **Turner** *Step Two*

Because Plaintiff's deliberate indifference claim arguably survives under *Turner*'s first step, the Court must proceed to step two. At *Turner*'s second step, any disputed facts must be examined to determine whether Plaintiff exhausted the available administrative remedies prior to filing suit. In support of their motion for judgment on the pleadings, Defendants provided Plaintiff's grievance history, the applicable grievance policy, Plaintiff's deposition, and a declaration from Kelly Dunagan, the Grievance Coordinator at WSP. (Docs. 26-2; 26-3; 26-5; 26-6; 26-7).

In his response to Defendants' motion, Plaintiff states that he filed a grievance outside of the 10-day window but the grievance procedure was impeded. (Doc. 28). In support, he directs the Court to a grievance appeal form dated May 14, 2024, in which he states he submitted a grievance "about December 2023 or maybe January 2024" and has not received the warden's response. (Doc. 26-5, p. 4). This document, along with his statement on the original grievance form that "I fear for my life" and his deposition testimony that there was a "misrepresentation of the grievance system," could be construed as an argument that the administrative grievance process was unavailable to him. (*Id.*, p. 6).

The evidence presented by the parties shows that Plaintiff filed forty-eight (48) grievances from April 2020 through August 2024. (Doc. 26-6). At issue in this case is Grievance No. 364543. Plaintiff alleged in this grievance that:

> On the very last week of September 2023, I was in cell 248 housing unit J2. I Bradley Houston told duty officer to get me out the cell because my cell mate attacked me in the middle of me doing paper work. I informed the officer that we fought four times and I was injured. Moments later Latorsha Jones came inside housing unit J2, to sign observation door charts. When Latorsha Jones approached cell #248, I told her I needed to get out of the cell. Because me and my cellmate fought four times, I also showed her that my lip was busted. Latorsha Jones bent down and looked at me saying she was not about to get me out. Because I was left in the cell my head was busted, and I had to go to the hospital for staples and stitches. The officer on duty name is Officer Mitchell. . . .
>
> (Doc. 26-5, p. 6) (cleaned up).

There is no question Plaintiff grieved the issue relevant to this lawsuit in Grievance No. 364543. The central issue in this case is when Plaintiff filed this grievance and whether he exhausted his administrative remedies.

The grievance form contains a section titled "DATE COMPLETED FORM RECEIVED FROM OFFENDER[.]" (*Id.*). Although this section, along with two other areas on the form, is dated October 21, 2023, these dates are crossed out, replaced with the date January 23, 2024, and signed off, presumably by a Calhoun State Prison staff member. (*Id.*). If the incident occurred as late as September 30, 2023, and the form was not completed until January 23, 2024, Plaintiff waited approximately 115 days to file the grievance—105 days outside the accepted 10-day window. (*Id.*); *see* (Doc. 26-3, p. 8). Even if the Court were to consider the original, crossed-out date of October 21, 2023, Plaintiff would have been outside the 10-day window by eleven days.

Plaintiff acknowledges in the original grievance (Doc. 26-5, p. 6), the appeal form (*Id.*, p. 4), and his response (Doc. 28) that he filed outside of the 10-day window. The record reflects that the Warden denied the grievance on February 28, 2024, for being out of time. (Doc. 26-5, p. 5). Plaintiff acknowledged receipt of the Warden's response on May 14, 2024, the same day he filed the appeal in which he stated he had not received the response yet. (*Id.*, pp. 4–5). The appeal was subsequently denied for Plaintiff's failure to file the grievance within the required 10-day period. (*Id.*, p. 3).

Plaintiff's contention that he feared for his life suggests the argument that any failure to exhaust should be excused because the grievance process was unavailable to him. (Doc. 26-5, p. 6). "A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of [its] purpose.'" *Turner*, 541 F.3d at 1084 (quoting *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1322–23 (11th Cir. 2007). Once a defendant shows that an administrative remedy is available, "the burden of going forward shifts to the plaintiff, who, pursuant to *Turner*, must demonstrate that the grievance procedure was subjectively and objectively unavailable to him." *Geter v. Baldwin State Prison*, 974 F.3d 1348, 1355 (11th Cir. 2020) (quotations and citations omitted). Courts have outlined three different ways a plaintiff can show that administrative remedies are unavailable:

> The modifier "available" means that an administrative remedy must provide the possibility of some relief. *Id.* at 643. There are three kinds of circumstances that make an administrative remedy unavailable. *Id.* First, an administrative remedy is unavailable when the administrative procedure operates as a simple "dead end," with officers unable or consistently unwilling to provide any relief to aggrieved inmates. *Id.* For example, if a handbook required inmates to submit grievances to a particular office and the office disclaims the capacity to consider petitions or if officials have authority but decline to exercise it, then it is unavailable. *Id.* Second,

> a remedy is unavailable when an administrative scheme is so opaque that it is incapable of use. *Id.* The mechanism may exist to provide relief, but no ordinary prisoner can discern or navigate it. *Id.* at 643–644. Third, a remedy is unavailable when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, and intimidation. *Id.* at 644.
>
> *McDowell v. Bowman*, 2022 WL 4140331, at *3 (11th Cir. Sept. 13, 2022) (citing *Ross v. Blake*, 578 U.S. 632 (2016)).

As to unavailability, Defendants have carried their initial burden by providing the Court with the GDC's two-step administrative process. (Doc. 26-3). Defendants do not address Plaintiff's contention that he filed out of time because he feared for his life, but state only that Plaintiff has not satisfied the "good cause" requirement outlined in the SOP. (Doc. 29); *see* (Doc. 26-3, p. 8).

To survive, Plaintiff must have shown that WSP's grievance procedure was both subjectively and objectively unavailable. He has not done so. Plaintiff's assertions that there was a misrepresentation and that he was scared for his life would fall under the third *Ross* exception. In *Ross*, the Supreme Court recognized several examples from other courts of what may represent unavailability caused by "machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 644 n.3. These examples include cases where staff members mislead an inmate as to the rules or existences of a grievance process to make the inmate fail to exhaust, where an inmate is prevented by threats from seeking an administrative remedy, or where staff members play "hide and seek" with administrative remedies. *Id.* The Eleventh Circuit has explained that for intimidation or threats to make the grievance process unavailable, Plaintiff must show that "(1) the threat actually deterred the inmate from lodging a grievance or pursuing part of the grievance process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust."

*Montalban v. Samuels*, 2022 WL 4362800, at *2 (11th Cir. Sept. 21, 2022) (citing *Turner*, 541 F.3d at 1085).

Plaintiff does not provide any examples of threats he allegedly received, give any details as to why he was scared or who he was scared of, or show that he was actually deterred from pursuing the grievance process. To the contrary, Plaintiff actually filed a grievance about the alleged incident, albeit out of time. He has since filed four (4) more unrelated grievances. (Doc. 26-6, p. 2). The record indicates plainly that the grievance process was available to Plaintiff, and Plaintiff failed to show good cause under the SOP as to his out-of-time filing or unavailability here to excuse the late filing. Based on the record before the Court, the grievance process was available to Plaintiff, and he is not excused from the exhaustion requirement.

## CONCLUSION

Because Plaintiff failed to exhaust his administrative remedies as required before bringing this action, it is **RECOMMENDED** that Defendants' motion for judgment on the pleadings (Doc. 26) be **GRANTED** and that Plaintiff's claim be **DISMISSED**.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof. Any objection is limited in length to **TWENTY (20) PAGES.** *See* M.D. Ga. L.R. 7.4. The District Judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to

challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 22nd day of October, 2025.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge